```
                                              FILED
                                        CLERK, U.S. DISTRICT COURT

                                        3/12/2024

                                        CENTRAL DISTRICT OF CALIFORNIA
                                        BY: _____CDO_____ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2024 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE LUIS PEREZ-LAGOS,<br>GERARDO EMMANUEL CHANAX-MORALES,<br>JUAN LEPEZ CISNEROS,<br>LUIS OROZCO,<br>OCTAVIO MORALES DE JESUS JR.,<br>SAUL GARCIA JR.,<br>REYNALDO ANTONIO CALDERON, and<br>DUBLAS GEOVANNI CENTES,<br><br>Defendants. | No. 2:24-cr-00167-MEMF<br><br>I N D I C T M E N T<br><br>[21 U.S.C. § 846: Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances; 21 U.S.C. §§ 848(a), (b): Continuing Criminal Enterprise; 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B), (b)(1)(C): Possession with Intent to Distribute Controlled Substances; 18 U.S.C. § 924(c)(1)(A): Possession of Firearms in Furtherance of Drug Trafficking Crimes; 18 U.S.C. § 1956(h): Conspiracy to Launder Monetary Instruments; 18 U.S.C. § 924, 18 U.S.C. § 982, 21 U.S.C. § 853, 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

//

//

//

//

COUNT ONE

[21 U.S.C. § 846]

[ALL DEFENDANTS]

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, and continuing until on or about March 12, 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendants JOSE LUIS PEREZ-LAGOS, GERARDO EMMANUEL CHANAX-MORALES ("CHANAX"), JUAN LEPEZ CISNEROS, LUIS OROZCO, OCTAVIO MORALES DE JESUS JR. ("MORALES"), SAUL GARCIA JR., REYNALDO ANTONIO CALDERON, and DUBLAS GEOVANNI CENTES, and others known and unknown to the Grand Jury, conspired with each other to knowingly and intentionally distribute and possess with intent to distribute:

(a)   At least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii);

(b)   At least 400 grams of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(vi);

(c)   At least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(ii); and

(d)   At least one kilogram of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug

controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(i).

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished, in substance, as follows:

1.   Defendants PEREZ and LEPEZ would obtain controlled substances and supply co-conspirators with controlled substances for further distribution.

2.   Defendants PEREZ, CHANAX, LEPEZ, OROZCO, MORALES, GARCIA, CALDERON, and CENTES would distribute controlled substances, including methamphetamine, fentanyl, cocaine, and heroin, to customers in other states by shipping packages containing the controlled substances through the United States Postal Service.

3.   Defendants PEREZ and LEPEZ would arrange for the collection of drug proceeds by defendant OROZCO.

4.   Defendant OROZCO would collect drug proceeds.

5.   Defendant OROZCO would mail drug proceeds, concealed in parcels, to Los Angeles, California, and elsewhere, from other states, including Mississippi.

6.   Defendants PEREZ and LEPEZ would arrange for the smuggling of bulk cash to Mexico from the United States.

7.   Defendant MORALES would possess firearms to protect drugs and drug proceeds.

C.   OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendants PEREZ, CHANAX, LEPEZ, OROZCO, MORALES, GARCIA, CALDERON, and CENTES, and others

3

known and unknown to the Grand Jury, committed various overt acts in Los Angeles County, within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1:   On February 17, 2021, defendant CHANAX went to a post office in Los Angeles, California, and attempted to mail a package to Tylertown, Mississippi, containing approximately 49.46 grams of a mixture and substance containing a detectable amount of fentanyl, which defendants CHANAX and MORALES had packaged.

Overt Act No. 2:   On March 30, 2021, defendant CHANAX went to a post office in Los Angeles, California, and attempted to mail a package to Pompano Beach, Florida, containing approximately 499.3 grams of a mixture and substance containing a detectable amount of fentanyl, which defendants CHANAX and MORALES had packaged.

Overt Act No. 3:   On April 5, 2021, defendant PEREZ called the United States Postal Service customer service regarding two parcels, after having tracked the March 30, 2021, package and the two other parcels via the same Internet Protocol address.

Overt Act No. 4:   On May 25, 2021, defendant PEREZ was the intended recipient of a package containing approximately $10,980 of drug proceeds, which had been mailed to his home.

Overt Act No. 5:   On August 10, 2021, defendant CHANAX went to a post office in Los Angeles, California, and mailed a package to Fort Lauderdale, Florida, containing approximately 2,552 grams of methamphetamine.

Overt Act No. 6:   On August 17, 2021, defendant CHANAX went to a post office in Los Angeles, California, and mailed a package to Rome, Georgia, containing approximately 2,572 grams of

4

methamphetamine, which defendants CHANAX, OROZCO, and CENTES had packaged.

Overt Act No. 7:   On September 18, 2021, defendant PEREZ called United States Postal Service customer service regarding a parcel containing $19,980, for which he was the intended recipient.

Overt Act No. 8:   On September 28, 2021, defendant CHANAX went to a post office in Los Angeles, California, and mailed a package to West Palm Beach, Florida, containing approximately 2,510 grams of methamphetamine.

Overt Act No. 9:   On September 30, 2021, defendant CHANAX went to a post office in Los Angeles, California, and mailed a package to West Palm Beach, Florida, containing approximately 999.7 grams of a mixture and substance containing a detectable amount of cocaine.

Overt Act No. 10:   On October 18, 2021, defendant CHANAX went to a post office in Los Angeles, California, and mailed a package to Jackson, Mississippi, containing approximately 447.52 grams of a mixture and substance containing a detectable amount of methamphetamine.

Overt Act No. 11:   On October 26, 2021, defendant CHANAX went to a post office in Los Angeles, California, and mailed a package to Atlanta, Georgia, containing approximately 2,618 grams of methamphetamine, which defendants CHANAX and MORALES had packaged.

Overt Act No. 12:   On November 4, 2021, defendant PEREZ, using coded language in a telephone conversation, told defendant OROZCO that he needed him to deliver money.

Overt Act No. 13:   On November 5, 2021, defendant CHANAX, using coded language in a telephone conversation, told defendant CENTES to prepare approximately 15 pounds of methamphetamine.

Overt Act No. 14:   On November 7, 2021, defendant PEREZ, using coded language in a telephone conversation, asked defendant LEPEZ to give $15,000 to defendant PEREZ's uncle in Rosarito, Mexico, so that his uncle could purchase a kilogram of heroin.

Overt Act No. 15:   On November 7, 2021, defendants PEREZ and LEPEZ, using coded language in a telephone conversation, discussed their drug customers in New Orleans, Louisiana, and Mississippi.

Overt Act No. 16:   On November 7, 2021, defendant PEREZ and a co-conspirator ("Co-Conspirator 1"), using coded language in a telephone conversation, discussed whether defendant PEREZ would purchase either 30 or 60 pounds of methamphetamine after defendant PEREZ had recently obtained several hundred additional pounds of methamphetamine.

Overt Act No. 17:   On November 8, 2021, defendant CHANAX, using coded language in a telephone conversation, told a methamphetamine customer that he would sell methamphetamine for approximately $1,400-$1,500 per pound.

Overt Act No. 18:   On November 8, 2021, defendant CHANAX, using coded language in a telephone conversation, told a co-conspirator and drug broker ("Co-Conspirator 2") that defendant CHANAX would sell heroin for approximately $650-$850 per ounce.

Overt Act No. 19:   On November 9, 2021, defendant CHANAX, using coded language in a telephone conversation, asked defendant CENTES to prepare approximately 12 pounds of methamphetamine for defendant CHANAX to pick up.

Overt Act No. 20:   On November 9, 2021, defendant LEPEZ, using coded language in a telephone conversation, told defendant PEREZ that

he would give $15,000 to defendant PEREZ's uncle in Rosarito, Mexico, so that his uncle could purchase a kilogram of heroin.

Overt Act No. 21:   On November 9, 2021, defendant PEREZ, using coded language in a telephone conversation, told defendant LEPEZ to deliver the $15,000 quickly, because police were nearby.

Overt Act No. 22:   On November 9, 2021, defendant CALDERON, using coded language in a telephone conversation, asked defendant PEREZ for the price of 20 pounds of methamphetamine, which defendant PEREZ said should cost a total of approximately $30,000-$32,000.

Overt Act No. 23:   On November 9, 2021, defendant CALDERON, using coded language in a telephone conversation, told defendant PEREZ that his customer wanted to purchase methamphetamine for $1,100 per pound, which defendant PEREZ explained would not be profitable.

Overt Act No. 24:   On November 10, 2021, defendant PEREZ, using coded language in a telephone conversation, told defendant GARCIA that he needed defendant GARCIA to count drug proceeds.

Overt Act No. 25:   On November 14, 2021, defendant CENTES, using coded language in a telephone conversation, told defendant CHANAX that he had received a large bag of drug proceeds.

Overt Act No. 26:   On November 14, 2021, defendant CHANAX, using coded language in a telephone conversation, told defendant CENTES to count drug proceeds and separate them into separate stacks of thousands.

Overt Act No. 27:   On November 15, 2021, defendant CENTES, using coded language in a telephone conversation, told defendant CHANAX that he had two pounds of methamphetamine available.

1    Overt Act No. 28:   On November 15, 2021, defendant CHANAX,

2    using coded language in a telephone conversation, told defendant

3    CENTES that he was in line at a post office to mail a package.

4    Overt Act No. 29:   On November 15, 2021, defendant CHANAX,

5    using coded language in a telephone conversation, told a drug

6    customer that he had fentanyl available and would sell

7    methamphetamine for approximately $1,500 per pound.

8    Overt Act No. 30:   On November 15, 2021, defendant PEREZ, using

9    coded language in a telephone conversation, told defendant CHANAX to

10   deliver 2,000 fentanyl pills to Co-Conspirator 1.

11   Overt Act No. 31:   On November 15, 2021, defendant PEREZ, using

12   coded language in a telephone conversation, asked defendant CENTES

13   how many units of drugs he had unloaded with defendant OROZCO

14   approximately three days prior.

15   Overt Act No. 32:   On November 17, 2021, defendant CHANAX,

16   using coded language in a telephone conversation, told Co-Conspirator

17   1 that he was going to deliver a kilogram of fentanyl to Co-

18   Conspirator 1.

19   Overt Act No. 33:   On November 17, 2021, defendant CHANAX,

20   using coded language in a telephone conversation, told defendant

21   CENTES to take one kilogram of fentanyl from a crate, which also

22   contained other drugs, including heroin.

23   Overt Act No. 34:   On November 18, 2021, defendant CHANAX,

24   using coded language in a telephone conversation, discussed the price

25   of pound-quantities of methamphetamine with Co-Conspirator 2.

26   Overt Act No. 35:   On November 21, 2021, defendant CHANAX,

27   using coded language in a telephone conversation, asked a co-

28   conspirator and methamphetamine source of supply ("Co-Conspirator 3")

8

1    whether defendant PEREZ had told him that defendant CHANAX was going

2    to pick up approximately 36 pounds of methamphetamine.

3        Overt Act No. 36:   On November 22, 2021, defendant PEREZ, using

4    coded language in a telephone conversation, instructed defendant

5    CHANAX to prepare ten parcels containing drugs for shipment and to

6    have defendants OROZCO, CENTES, and GARCIA assist him.

7        Overt Act No. 37:   On November 22, 2021, defendant CHANAX went

8    to a post office in Los Angeles, California, and mailed a package to

9    New Orleans, Louisiana, for defendant PEREZ, containing approximately

10   2,619 grams of methamphetamine.

11       Overt Act No. 38:   On November 22, 2021, defendant CHANAX went

12   to a post office in Los Angeles, California, and mailed a package to

13   New Orleans, Louisiana, for defendant PEREZ, containing approximately

14   2,623 grams of methamphetamine.

15       Overt Act No. 39:   On November 22, 2021, defendant OROZCO went

16   to a post office in Los Angeles, California, and mailed a package to

17   Fort Lauderdale, Florida, for defendant PEREZ, containing

18   approximately 2,608.6 grams of methamphetamine.

19       Overt Act No. 40:   On November 22, 2021, defendant OROZCO went

20   to a post office in Los Angeles, California, and mailed a package to

21   Fort Lauderdale, Florida, for defendant PEREZ, containing

22   approximately 986.2 grams of fentanyl.

23       Overt Act No. 41:   On November 22, 2021, defendant PEREZ, using

24   coded language in a telephone conversation, instructed defendant

25   CHANAX to prepare 1,000 fentanyl pills for distribution to a

26   customer.

27       Overt Act No. 42:   On November 22, 2021, defendant CHANAX,

28   using coded language in a telephone conversation, told a fentanyl

9

customer that approximately 1,000 fentanyl pills were ready for pick-up.

Overt Act No. 43:   On November 26, 2021, defendant CHANAX, using coded language in a telephone conversation, asked to pick up approximately one pound of methamphetamine from Co-Conspirator 3.

Overt Act No. 44:   On November 29, 2021, defendant CHANAX, using coded language in a telephone conversation, discussed the price per pound of methamphetamine with Co-Conspirator 2, who was trying to broker a sale of methamphetamine.

Overt Act No. 45:   On November 30, 2021, defendant CHANAX, using coded language in a telephone conversation, discussed selling ounces of cocaine with Co-Conspirator 2, who was trying to broker the sale of cocaine.

Overt Act No. 46:   On December 1, 2021, defendant PEREZ, using coded language in a telephone conversation, told a methamphetamine customer who had recently been released from custody that the price of methamphetamine was $1,600 per pound.

Overt Act No. 47:   On December 2, 2021, defendant PEREZ and Co-Conspirator 1, using coded language in a telephone conversation, discussed the pick-up of ten pounds of methamphetamine, as well as the possibility of another deal for fifty pounds of methamphetamine.

Overt Act No. 48:   On January 11, 2022, defendant GARCIA went to a post office in Los Angeles, California, and mailed a package to Columbia, Missouri, containing approximately 2,384 grams of methamphetamine.

Overt Act No. 49:   On January 11, 2022, defendant GARCIA went to a post office in Los Angeles, California, and mailed a package to

Columbia, Missouri, containing approximately 2,436 grams of methamphetamine.

Overt Act No. 50:   On February 16, 2022, defendant PEREZ, using coded language in a telephone conversation, told defendant CALDERON that he would pay for defendant CALDERON's flight to Mississippi, where defendant CALDERON would pick-up drug proceeds.

Overt Act No. 51:   On February 16, 2022, defendant PEREZ, using coded language in a telephone conversation, provided defendant CALDERON with information about defendant CALDERON's flight to Mississippi, and instructed him to bring extra sets of clothing to be used to conceal drug proceeds that were to be shipped back to Los Angeles, California.

Overt Act No. 52:   On February 16, 2022, defendant LEPEZ, using coded language in a telephone conversation, told defendant OROZCO that someone would deliver $38,000 of drug proceeds to him.

Overt Act No. 53:   On February 16, 2022, defendant OROZCO, using coded language in a telephone conversation, told defendant LEPEZ that he had received $38,000 of drug proceeds for defendant LEPEZ.

Overt Act No. 54:   On February 17, 2022, defendant LEPEZ, using coded language in a telephone conversation, told defendant PEREZ he was going to provide defendant PEREZ's courier with 72 pounds of methamphetamine.

Overt Act No. 55:   On February 17, 2022, defendant PEREZ, using coded language in a telephone conversation, told defendant LEPEZ that his courier had received 72 pounds of methamphetamine from defendant LEPEZ's courier, and defendant LEPEZ asked if defendant PEREZ needed an additional 44 pounds of methamphetamine.

1        <u>Overt Act No. 56:</u>   On February 18, 2022, defendant LEPEZ, using

2    coded language in a telephone conversation, told a money courier that

3    he would be picking up $203,900 of drug proceeds, which the courier

4    transported in the courier's vehicle later that day.

5        <u>Overt Act No. 57:</u>   On February 18, 2022, defendant PEREZ, using

6    coded language in a text message conversation, told a drug customer

7    that defendant PEREZ would sell 500 fentanyl pills for $500.

8        <u>Overt Act No. 58:</u>   On February 19, 2022, defendant CALDERON,

9    using coded language in a telephone conversation, asked defendant

10   PEREZ for three kilograms of heroin and four kilograms of cocaine.

11       <u>Overt Act No. 59:</u>   On February 19, 2022, defendant LEPEZ, using

12   coded language in a telephone conversation, told defendant OROZCO

13   that someone was going to deliver $20,000 to him.

14       <u>Overt Act No. 60:</u>   On February 19, 2022, defendant LEPEZ, using

15   coded language in a telephone conversation, asked a drug customer for

16   $20,000 after defendant LEPEZ's driver had delivered methamphetamine

17   to him.

18       <u>Overt Act No. 61:</u>   On February 19, 2022, defendants PEREZ and

19   LEPEZ, using coded language in a telephone conversation, discussed

20   smuggling over $100,000 of bulk cash drug proceeds to Mexico.

21       <u>Overt Act No. 62:</u>   On February 20, 2022, defendant LEPEZ, using

22   coded language in a telephone conversation, told defendant OROZCO

23   that a money courier would deliver additional drug proceeds to him in

24   Hattiesburg, Mississippi, which would then be sent back to Los

25   Angeles, California.

26       <u>Overt Act No. 63:</u>   On February 20, 2022, defendant OROZCO,

27   using coded language in a telephone conversation, told defendant

28

LEPEZ that the drug proceeds defendant OROZCO had received for defendant LEPEZ was short.

Overt Act No. 64:   On February 21, 2022, defendant PEREZ, using coded language in a telephone conversation, told defendant OROZCO that he would be paid $5,000, plus $1,000 per week of work, for traveling out of state and bringing $30,000 of drug proceeds back to Los Angeles, California.

Overt Act No. 65:   On February 22, 2022, defendant PEREZ, using coded language in a telephone conversation, offered to sell a drug customer 30 pounds of methamphetamine for $1,000 per pound.

Overt Act No. 66:   On February 24, 2022, defendant LEPEZ, using coded language in a telephone conversation, told defendant OROZCO that he was trying to collect as much drug proceeds as he could for defendant OROZCO to receive before returning to Los Angeles, California, from Mississippi.

Overt Act No. 67:   On February 25, 2022, defendant LEPEZ, using coded language in a telephone conversation, discussed obtaining cocaine and methamphetamine from a source of supply.

Overt Act No. 68:   On February 27, 2022, defendant OROZCO, using coded language in a telephone conversation, told defendant PEREZ that he had received $25,000 of drug proceeds, and defendant PEREZ told him that defendant OROZCO should wait to return to Los Angeles, California, until he received an additional $60,000 of drug proceeds.

Overt Act No. 69:   On February 28, 2022, defendant PEREZ, using coded language in a telephone conversation, told defendant OROZCO that he could return to Los Angeles, California after someone delivers another $12,500 of drug proceeds to him.

13

Overt Act No. 70:   On February 20, 2022, defendant LEPEZ, using coded language in a telephone conversation, told a co-conspirator that defendant LEPEZ would try to send a courier to pick up ten pounds of methamphetamine in San Diego, California, which were being sold for $750 per pound.

Overt Act No. 71:   On March 1, 2022, defendants PEREZ and OROZCO, using coded language in a telephone conversation, discussed when defendant OROZCO should return to Los Angeles, California, and whether someone would deliver an additional $12,000 of drug proceeds to defendant OROZCO.

Overt Act No. 72:   On March 1, 2022, defendant PEREZ and a co-conspirator ("Co-Conspirator 4"), using coded language in a telephone conversation, discussed an upcoming load of approximately 600 pounds of methamphetamine, which would be crossing into the United States from Mexico the following day.

Overt Act No. 73:   On March 2, 2022, defendant PEREZ and a transporter of methamphetamine, using coded language in a series of telephone conversations, arranged for the delivery of a large load of methamphetamine.

Overt Act No. 74:   On March 2, 2022, defendant PEREZ and a transporter of methamphetamine, using coded language in a series of telephone conversations, discussed defendant PEREZ receiving a drug load which contained 135 bundles of seven pounds of methamphetamine each (for a total of approximately 945 pounds of methamphetamine).

Overt Act No. 75:   On March 2, 2022, defendant PEREZ, using coded language in a telephone conversation, told defendant MORALES to give a drug customer five pounds of methamphetamine and to supply defendant CALDERON with three pounds of methamphetamine.

14

Overt Act No. 76:   On March 4, 2022, defendant PEREZ, using coded language in a telephone conversation, told a drug customer that he would send him defendant MORALES' phone number so that the customer would tell defendant MORALES to give the customer two pounds of methamphetamine.

Overt Act No. 77:   On March 4, 2022, defendant PEREZ, using coded language in a telephone conversation, told defendant MORALES that defendant CHANAX handled a drug deliver after defendant MORALES had not answered his phone, and then asked defendant MORALES to receive a delivery of heroin on his behalf.

Overt Act No. 78:   On March 5, 2022, defendant PEREZ, using coded language in a telephone conversation, told defendant MORALES to provide seven pounds of methamphetamine to a drug customer.

Overt Act No. 79:   On March 5, 2022, defendant PEREZ, using coded language in a telephone conversation, offered to sell a drug customer a pound of methamphetamine for approximately $1,500.

Overt Act No. 80:   On March 9, 2022, defendant CHANAX went to a post office in Los Angeles, California, and mailed a package to Bear Creek, North Carolina, containing approximately 1,677 grams of methamphetamine.

Overt Act No. 81:   On March 10, 2022, defendant PEREZ, using coded language in a telephone conversation, asked defendant CENTES to prepare methamphetamine for sale.

Overt Act No. 82:   On March 10, 2022, defendant MORALES, using coded language in a telephone conversation, told defendant PEREZ that he currently had five pounds of methamphetamine available.

1   <u>Overt Act No. 83:</u>   On March 10, 2022, defendant CENTES, using
2   coded language in a telephone conversation, told defendant PEREZ that
3   the drugs he had just received appeared to be "watered."

4   <u>Overt Act No. 84:</u>   On March 11, 2022, defendant CALDERON, using
5   coded language in a telephone conversation, asked defendant PEREZ for
6   fentanyl pills, which defendant PEREZ offered to sell for $1 per pill
7   if he purchased 5,000 pills.

8   <u>Overt Act No. 85:</u>   On March 11, 2022, defendant PEREZ, using
9   coded language in a telephone conversation, told defendant MORALES,
10  after defendant MORALES said that he had a conflict and would be
11  unable distribute two pounds of methamphetamine, that defendant PEREZ
12  would have defendant CHANAX distribute the methamphetamine instead.

13  <u>Overt Act No. 86:</u>   On March 13, 2022, defendant PEREZ, using
14  coded language in a telephone conversation, told a fentanyl customer
15  that he would sell him 1,000 fentanyl pills.

16  <u>Overt Act No. 87:</u>   On March 14, 2022, defendant PEREZ, using
17  coded language in a telephone conversation, told defendant CHANAX
18  that a customer wanted three pounds of methamphetamine, which
19  defendant PEREZ said defendant CHANAX could obtain from defendant
20  MORALES.

21  <u>Overt Act No. 88:</u>   On March 14, 2022, defendant LEPEZ, using
22  coded language in a telephone conversation, said that he had
23  customers willing to buy pounds of methamphetamine for $2,200 in New
24  York, but that transportation costs limit his profit.

25  <u>Overt Act No. 89:</u>   On March 16, 2022, defendant LEPEZ, using
26  coded language in a telephone conversation, asked a drug broker to
27  let his customer know that defendant LEPEZ would be calling him soon
28  to arrange for the delivery of 30 pounds of methamphetamine.

<u>Overt Act No. 90:</u>   On April 12, 2022, defendant PEREZ, using coded language in a telephone conversation, agreed to sell five pounds of methamphetamine and one kilogram of heroin to a customer, which defendant MORALES would supply.

<u>Overt Act No. 91:</u>   On May 4, 2022, defendant PEREZ possessed with the intent to distribute approximately 19.29 kilograms of methamphetamine, which his courier transported in a vehicle.

<u>Overt Act No. 92:</u>   On May 5, 2022, defendant PEREZ and a methamphetamine source of supply, using coded language in a series of telephone conversations, discussed the seizure of approximately 19.29 kilograms of methamphetamine that occurred on May 4, 2022.

<u>Overt Act No. 93:</u>   On July 28, 2022, defendant OROZCO mailed a package from Hattiesburg, Mississippi, containing approximately $10,000 of drug proceeds, which was concealed inside several articles of clothing inside a parcel, to defendant PEREZ in Los Angeles, California.

<u>Overt Act No. 94:</u>   On August 30, 2022, in his home in Los Angeles, defendant PEREZ possessed with intent to distribute approximately 245.4 grams of methamphetamine and approximately 197.05 grams of mixture and substance containing a detectable amount of both heroin and fentanyl.

<u>Overt Act No. 95:</u>   On August 30, 2022, in his home in Los Angeles, defendant GARCIA possessed with intent to distribute approximately 4,495 grams of methamphetamine, approximately 136.6 grams of a mixture and substance containing a detectable amount of cocaine, and approximately 13.18 grams of a mixture and substance containing a detectable amount of fentanyl.

<u>Overt Act No. 96:</u>   On August 30, 2022, in his home in Los Angeles, defendant MORALES possessed with intent to distribute approximately 5,191 grams of methamphetamine and approximately 1,015 grams of a mixture and substance containing a detectable amount of fentanyl, and also possessed a Rossi .38 caliber revolver, bearing serial number J033099 and $2,700 of drug proceeds.

1

COUNT TWO

2

[21 U.S.C. §§ 848(a), (b)]

3

[DEFENDANT PEREZ]

4       Beginning on an unknown date, but not later than February 4,
5  2020, and continuing to on or about March 12, 2024, in Los Angeles
6  County, within the Central District of California, and elsewhere,
7  defendant JOSE LUIS PEREZ-LAGOS engaged in a continuing criminal
8  enterprise in that defendant PEREZ knowingly and intentionally
9  violated Title 21, United States Code, Sections 841(a)(1) and 846, by
10  committing violations, including but not limited to, the felony
11  violations alleged in Counts One, Eleven, Twelve, Thirteen, Fourteen,
12  Eighteen, Nineteen, and Twenty of this Indictment, which Counts are
13  re-alleged and incorporated herein by reference as if fully set forth
14  in this Count, all of which violations were part of a continuing
15  series of felony violations of subchapters I and II of Title 21 of
16  the United States Code, undertaken by defendant PEREZ in concert with
17  at least five other persons with respect to whom defendant PEREZ
18  occupied a position of organizer, supervisor, and manager, and from
19  which continuing series of violations defendant PEREZ obtained
20  substantial income and resources.

21       Furthermore, defendant PEREZ was a principal administrator,
22  organizer, and leader of the criminal enterprise, which involved the
23  distribution of at least 15 kilograms of methamphetamine, a Schedule
24  II controlled substance.

25

26

27

28

19

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi); 18 U.S.C. § 2(a)]

[DEFENDANTS CHANAX and MORALES]

On or about February 17, 2021, in Los Angeles County, within the Central District of California, defendants GERARDO EMMANUEL CHANAX-MORALES and OCTAVIO MORALES DE JESUS JR., each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least 40 grams, that is, approximately 49.46 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi); 18 U.S.C. § 2(a)]

[DEFENDANTS CHANAX and MORALES]

On or about March 30, 2021, in Los Angeles County, within the Central District of California, defendants GERARDO EMMANUEL CHANAX-MORALES and OCTAVIO MORALES DE JESUS JR., each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least 400 grams, that is, approximately 499.3 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT CHANAX]

On or about August 10, 2021, in Los Angeles County, within the Central District of California, defendant GERARDO EMMANUEL CHANAX-MORALES knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 2,552 grams, of methamphetamine, a Schedule II controlled substance.

COUNT SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

[DEFENDANT CHANAX, OROZCO, and CENTES]

On or about August 17, 2021, in Los Angeles County, within the Central District of California, defendants GERARDO EMMANUEL CHANAX-MORALES, LUIS OROZCO, and DUBLAS GEOVANNI CENTES, each aiding and abetting the others, knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 2,572 grams, of methamphetamine, a Schedule II controlled substance.

COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT CHANAX]

On or about September 28, 2021, in Los Angeles County, within the Central District of California, defendant GERARDO EMMANUEL CHANAX-MORALES knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 2,510 grams, of methamphetamine, a Schedule II controlled substance.

COUNT EIGHT

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii)]

[DEFENDANT CHANAX]

On or about September 30, 2021, in Los Angeles County, within the Central District of California, defendant GERARDO EMMANUEL CHANAX-MORALES knowingly and intentionally possessed with intent to distribute at least 500 grams, that is, approximately 999.7 grams, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT NINE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

[DEFENDANT CHANAX]

On or about October 18, 2021, in Los Angeles County, within the Central District of California, defendant GERARDO EMMANUEL CHANAX-MORALES knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 447.52 grams, of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

COUNT TEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

[DEFENDANTS CHANAX and MORALES]

On or about October 26, 2021, in Los Angeles County, within the Central District of California, defendant GERARDO EMMANUEL CHANAX-MORALES and OCTAVIO MORALES DE JESUS JR., each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 2,618 grams, of methamphetamine, a Schedule II controlled substance.

COUNT ELEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

[DEFENDANTS PEREZ and CHANAX]

On or about November 22, 2021, in Los Angeles County, within the Central District of California, defendants JOSE LUIS PEREZ-LAGOS and GERARDO EMMANUEL CHANAX-MORALES, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 2,619 grams, of methamphetamine, a Schedule II controlled substance.

COUNT TWELVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

[DEFENDANTS PEREZ and CHANAX]

On or about November 22, 2021, in Los Angeles County, within the Central District of California, defendants JOSE LUIS PEREZ-LAGOS and GERARDO EMMANUEL CHANAX-MORALES, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 2,623 grams, of methamphetamine, a Schedule II controlled substance.

COUNT THIRTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

[DEFENDANTS PEREZ and OROZCO]

On or about November 22, 2021, in Los Angeles County, within the Central District of California, defendants JOSE LUIS PEREZ-LAGOS and LUIS OROZCO, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 2,608.6 grams, of methamphetamine, a Schedule II controlled substance.

COUNT FOURTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi); 18 U.S.C. § 2(a)]

[DEFENDANTS PEREZ and OROZCO]

On or about November 22, 2021, in Los Angeles County, within the Central District of California, defendants JOSE LUIS PEREZ-LAGOS and LUIS OROZCO, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least 400 grams, that is, approximately 986.2 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT FIFTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT GARCIA]

On or about January 11, 2022, in Los Angeles County, within the Central District of California, defendant SAUL GARCIA JR. knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 2,384 grams, of methamphetamine, a Schedule II controlled substance.

COUNT SIXTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT GARCIA]

On or about January 11, 2022, in Los Angeles County, within the Central District of California, defendant SAUL GARCIA JR. knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 2,436 grams, of methamphetamine, a Schedule II controlled substance.

COUNT SEVENTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT CHANAX]

On or about March 9, 2022, in Los Angeles County, within the Central District of California, defendant GERARDO EMMANUEL CHANAX-MORALES knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 1,677 grams, of methamphetamine, a Schedule II controlled substance.

COUNT EIGHTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

[DEFENDANT PEREZ]

On or about May 4, 2022, in Los Angeles County, within the Central District of California, defendant JOSE LUIS PEREZ-LAGOS and a co-conspirator, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 19.29 kilograms, of methamphetamine, a Schedule II controlled substance.

COUNT NINETEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT PEREZ]

On or about August 30, 2022, in Los Angeles County, within the Central District of California, defendant JOSE LUIS PEREZ-LAGOS knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 245.4 grams, of methamphetamine, a Schedule II controlled substance.

COUNT TWENTY

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi)]

[DEFENDANT PEREZ]

On or about August 30, 2022, in Los Angeles County, within the Central District of California, defendant JOSE LUIS PEREZ-LAGOS, knowingly and intentionally possessed with intent to distribute at least 40 grams, that is, approximately 197.05 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT TWENTY-ONE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT GARCIA]

On or about August 30, 2022, in Los Angeles County, within the Central District of California, defendant SAUL GARCIA JR. knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 4,495 grams, of methamphetamine, a Schedule II controlled substance.

COUNT TWENTY-TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

[DEFENDANT GARCIA]

On or about August 30, 2022, in Los Angeles County, within the Central District of California, defendant SAUL GARCIA JR. knowingly and intentionally possessed with intent to distribute N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT TWENTY-THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

[DEFENDANT GARCIA]

On or about August 30, 2022, in Los Angeles County, within the Central District of California, defendant SAUL GARCIA JR. knowingly and intentionally possessed with intent to distribute cocaine, a Schedule II narcotic drug controlled substance.

COUNT TWENTY-FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT MORALES]

On or about August 30, 2022, in Los Angeles County, within the Central District of California, defendant OCTAVIO MORALES DE JESUS JR. knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 5,191 grams, of methamphetamine, a Schedule II controlled substance.

COUNT TWENTY-FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi)]

[DEFENDANT MORALES]

On or about August 30, 2022, in Los Angeles County, within the Central District of California, defendant OCTAVIO MORALES DE JESUS JR. knowingly and intentionally possessed with intent to distribute at least 400 grams, that is, approximately 1,015 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT TWENTY-SIX

[18 U.S.C. § 924(c)(1)(A)(i)]

[DEFENDANT MORALES]

On or about August 30, 2022, in Los Angeles County, within the Central District of California, defendant OCTAVIO MORALES DE JESUS JR. knowingly possessed a firearm, namely, a Rossi .38 caliber revolver, bearing serial number J033099, in furtherance of drug trafficking crimes, namely, Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, as charged in Count One of this Indictment, Possession with Intent to Distribute Methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii), as charged in Count Twenty-Four of this Indictment, and Possession with Intent to Distribute Fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(vi), as charged in Count Twenty-Five of this Indictment.

1                          COUNT TWENTY-SEVEN

2                        [18 U.S.C. § 1956(h)]

3                  [DEFENDANTS PEREZ, LEPEZ, and OROZCO]

4    A.    OBJECTS OF THE CONSPIRACY

5          Beginning on a date unknown to the Grand Jury, and continuing

6    until on or about March 12, 2024, in Los Angeles County, within the

7    Central District of California, and elsewhere, defendants JOSE LUIS

8    PEREZ-LAGOS ("PEREZ"), JUAN LEPEZ CISNEROS ("LEPEZ"), and LUIS

9    OROZCO, and others known and unknown to the Grand Jury, conspired and

10   agreed with each other to:

11         1.    knowingly and intentionally conduct and attempt to conduct

12   financial transactions, affecting interstate and foreign commerce,

13   knowing that the property involved in the financial transactions

14   represented the proceeds of some form of unlawful activity, and which

15   property, in fact, involved the proceeds of specified unlawful

16   activity, that is, conspiracy to distribute and possess with intent

17   to distribute controlled substances, in violation of Title 21, United

18   States Code, Section 846, and knowing that the financial transactions

19   were designed in whole and in part to conceal and disguise the

20   nature, location, source, ownership, and control of the proceeds of

21   said specified unlawful activity, in violation of Title 18, United

22   States Code, Section 1956(a)(1)(B)(i);

23         2.    knowingly and intentionally transport, transmit, and

24   transfer, and attempt to transport, transmit, and transfer, funds

25   from a place in the United States to a place outside of the United

26   States, knowing that the funds involved in the transportation,

27   transmission, and transfer represented some form of unlawful

28   activity, and which funds, in fact, involved the proceeds of

                                     44

Case 2:24-cr-00167-MEMF   Document 1   Filed 03/12/24   Page 45 of 51   Page ID #:45

specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846, and knowing that such transportation, transmission, and transfer was designed in whole and in part to (a) conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i), and (b) avoid a transaction reporting requirement under State or Federal law, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(ii); and

3.    knowingly and intentionally transport, transmit, and transfer, and attempt to transport, transmit, and transfer, funds from a place in the United States to a place outside of the United States, with the intent to promote the carrying on of specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

B.    <u>MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED</u>

The objects of the conspiracy were to be accomplished, in substance, as follows:

1.    Defendants PEREZ and LEPEZ would arrange for the collection of drug proceeds by defendant OROZCO.

2.    Defendant OROZCO would collect drug proceeds.

3.    Defendant OROZCO would mail drug proceeds, concealed in parcels, to Los Angeles, California, from other states, including Mississippi.

4.   Defendants PEREZ and LEPEZ would arrange for the smuggling of bulk cash to Mexico from the United States.

C.   OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendants PEREZ, LEPEZ, and OROZCO, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles County, within the Central District of California, and elsewhere, including, but not limited to, overt acts 4, 7, 14, 20, 50-53, 56, 59, 61-64, 66, 68-69, 71, and 93, as set forth in Count One, which are hereby re-alleged here.

1              FORFEITURE ALLEGATION ONE

2      [21 U.S.C. § 853; 18 U.S.C. § 924; 28 U.S.C. § 2461(c)]

3      1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4 Procedure, notice is hereby given that the United States of America

5 will seek forfeiture as part of any sentence, pursuant to Title 21,

6 United States Code, Section 853, Title 18, United States Code,

7 Section 924, and Title 28, United States Code, Section 2461(c), in

8 the event of any defendant's conviction of the offenses set forth in

9 any of Counts One through Twenty-Five of this Indictment.

10     2.   Any defendant so convicted, shall forfeit to the United

11 States of America the following:

12          (a)  All right, title and interest in any and all property,

13 real or personal, constituting or derived from, any proceeds which

14 the defendant obtained, directly or indirectly, from any such

15 offense;

16          (b)  All right, title and interest in any and all property,

17 real or personal, used, or intended to be used, in any manner or

18 part, to commit, or to facilitate the commission of any such offense;

19          (c)  All right, title, and interest in any firearm or

20 ammunition involved in or used in any such offense; and

21          (d)  To the extent such property is not available for

22 forfeiture, a sum of money equal to the total value of the property

23 described in subparagraphs (a), (b), and (c).

24     3.   Pursuant to Title 21, United States Code, Section 853(p),

25 any defendant so convicted, shall forfeit substitute property if, by

26 any act or omission of said defendant, the property described in the

27 preceding paragraph, or any portion thereof: (a) cannot be located

28 upon the exercise of due diligence; (b) has been transferred, sold

47

to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

1

FORFEITURE ALLEGATION TWO

2

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

3      1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal

4  Procedure, notice is hereby given that the United States of America

5  will seek forfeiture as part of any sentence, pursuant to Title 18,

6  United States Code, Section 924(d)(1), and Title 28, United States

7  Code, Section 2461(c), in the event of any defendant's conviction of

8  the offense set forth in Count Twenty-Six of this Indictment.

9      2.   Any defendant so convicted, shall forfeit to the United

10 States of America the following:

11          (a)   All right, title, and interest in any firearm or

12 ammunition involved in or used in such offense; and

13          (b)   To the extent such property is not available for

14 forfeiture, a sum of money equal to the total value of the property

15 described in subparagraph (a).

16     3.   Pursuant to Title 21, United States Code, Section 853(p),

17 as incorporated by Title 28, United States Code, Section 2461(c), any

18 defendant so convicted, shall forfeit substitute property, up to the

19 value of the property described in the preceding paragraph if, as the

20 result of any act or omission of said defendant, the property

21 described in the preceding paragraph or any portion thereof (a)

22 cannot be located upon the exercise of due diligence; (b) has been

23 transferred, sold to, or deposited with a third party; (c) has been

24 placed beyond the jurisdiction of the court; (d) has been

25 substantially diminished in value; or (e) has been commingled with

26 other property that cannot be divided without difficulty.

27

28

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of any defendant's conviction of the offense set forth in Count Twenty-Seven of this Indictment.

2. Any defendant so convicted, shall forfeit to the United States of America the following:

(a)  Any property, real or personal, involved in such offense, and any property traceable to such property; and

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), any defendant so convicted, shall forfeit substitute property, if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the

course of the money laundering offense unless the defendant, in

committing the offense or offenses giving rise to the forfeiture,

conducted three or more separate transactions involving a total of

$100,000.00 or more in any twelve-month period.

                                    A TRUE BILL


                              _____/s/_____
                              Foreperson


E. MARTIN ESTRADA
United States Attorney



MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

J. MARK CHILDS
Assistant United States Attorney
Chief, International Narcotics,
Money Laundering, and
Racketeering Section

CHRISTOPHER C. KENDALL
Assistant United States Attorney
Deputy Chief, International
Narcotics, Money Laundering, and
Racketeering Section